No. 20,007.

ROBERT E. COLE *v.* THE COLORADO SPRINGS COMPANY.
(381 P. [2d] 13)

Decided April 22, 1963.     Rehearing denied May 13, 1963.

Plaintiff in error, pro se.

Messrs. MURRAY, BAKER and WENDELKEN, for defendant in error.

Mr. ROBERT W. JOHNSON, Messrs. BENNETT and HEINICKE, amici curiae.

*En Banc.*

MR. CHIEF JUSTICE FRANTZ delivered the opinion of the Court.

HAS the trial court pending before it a justiciable controversy when a party seeks to quiet the title to realty against which it is asserted there is a condition subsequent, although the condition has not as yet been violated, but which condition, it is alleged in a reply to

the answer setting forth the existence of the condition subsequent, has been nullified and rendered ineffectual by certain conduct of the reversioner? This is the issue presented by this writ of error, and its affirmative resolution would require a reversal of this case.

Cole filed his suit to quiet the title to certain real estate in Colorado Springs, Colorado. He made a number of parties defendants, among them the Colorado Springs Company, a Colorado corporation. The corporation filed its answer, in which it alleged that Cole was the owner of a fee title to the property and that said fee is a determinable fee. It claimed some right, title and interest in the property, arising from a right of re-entry or reversion in the event a condition contained in the deed from the defendant to Cole's predecessor in interest was broken, which condition prohibited the manufacture or sale of intoxicating liquors upon said premises for beverage purposes.

By reply, Cole set up a number of affirmative defenses, among them being (1) that the corporation originally laid out the first platted town of Colorado Springs and intended that said town should have no saloons or other drinking establishments, as were then in existence in Colorado City [adjacent to Colorado Springs], and develop in accordance with such plan; that since the inception of said town there has been a change of conditions, by reason of which there have been a large number of buildings and establishments in Colorado Springs in which intoxicating liquor is sold and dispensed to the public; (2) that the corporation has not enforced the condition even though it has been violated many times, and that in some instances it has sold its right to have the property revert, thereby waiving the condition subsequent.

At a pre-trial conference, a stipulation was entered into, in which it was agreed that the corporation sold lots and lands to purchasers, reserving on most of the

land a right of re-entry or reversion if liquor was sold to the public.

It was further stipulated:

"That in a number of instances the lots which were platted and sold by The Colorado Springs Company, and which land was originally deeded by The Colorado Springs Company with clauses providing for re-entry or reversion if liquor is manufactured or sold to the public, have had businesses which for over forty years have sold liquor to the public; yet, The Colorado Springs Company has for reasons of its own never seen fit to take steps to claim the forfeiture of all the titles upon which the businesses are situate.

\* \* \*

"That there are owners of real estate in the City of Colorado Springs, Colorado which have through the years acquired by payment a release from The Colorado Springs Company to claim any interests or right to claim a re-entry or reversion if liquor is manufactured or sold to the public.

"That there are owners of real estate in the City of Colorado Springs, Colorado owning land which was developed originally by The Colorado Springs Company and which owners have Deeds in their chain of title from The Colorado Springs Company which contain a right of re-entry or reversion if liquor is manufactured or sold to the public; and, which owners of real estate have been offered by The Colorado Springs Company a chance to acquire by payment a release from The Colorado Springs Company to claim any interests or right of re-entry or claim a reversion if liquor is manufactured or sold to the public."

Some evidence was introduced which was chiefly formal in character. The stipulation formed the basis of most of the evidence in the case. In its Findings of Fact, Conclusions of Law, and Decree, the court said:

"CONCLUSIONS OF LAW

"The Court has jurisdiction of the subject matter and

of the parties; that the interest of the Colorado Springs Company in the said property has not been lost nor waived; and that there is no valid ground at this time for the Colorado Springs Company to assert any right in the subject property but that plaintiff holds a defeasible estate and title to the property should be quieted in the plaintiff subject to the liquor covenant.

"WHEREFORE, IT IS ORDERED, ADJUDGED AND DECREED that the plaintiff is the owner of Lot 8 Block 8 in the South End Addition to the City of Colorado Springs, El Paso County, State of Colorado, subject only to the limitation that intoxicating liquor shall never be manufactured, sold, or otherwise disposed of, as a beverage, in any place of public resort, in or upon the premises hereby granted, or any part thereof; and it is herein and hereby expressly reserved by the Colorado Springs Company that in case any of the above conditions concerning intoxicating liquors are broken by said party of the second part, his assigns or legal representatives, then this Deed shall become null and void, and all right, title and interest of, in and to the premises hereby conveyed shall revert to the Colorado Springs Company."

What is the nature of the restriction in the deed which provides "that intoxicating liquors shall never be manufactured, sold or otherwise disposed of as a beverage in any place of public resort, in or upon the premises hereby granted, or any part thereof; and it is herein and hereby expressly reserved by the said party of the first part, that in case any of the above conditions concerning intoxicating liquors are broken by the said party of the second part, his assigns or legal representatives, then this deed shall become null and void, and all right, title and interest, of, in, and to the premises hereby conveyed, shall revert to the said party of the first part, its successors and assigns, and the said party of the second part by accepting this deed, for himself, his heirs, executors, administrators and assigns, consents

and agrees to the reservations and conditions aforesaid"?

In 1876 this Court interpreted the condition as one vesting in the grantor the right to "recover in ejectment upon proof of the breach, without previous entry, demand or notice." *Cowell v. Colorado Springs Co.,* 3 Colo. 82. Similar conditions have been the subjects of opinions of this Court. Out of these opinions has grown a body of law which is definitive. From them it may be garnered that the reversioner does not possess a present, nor a future or inchoate interest in the realty; he has only a possibility of reverter.

Like language in a deed was considered in *Union Colony v. Gallie,* 104 Colo. 46, 88 P. (2d) 120, and held to establish a condition subsequent, "creating a possibility of re-entry upon breach." "It is merely a possibility of the grantor coming into an estate in the future." There is in the grantor merely "a possibility of a reverter." It will be noted that the possibility of something happening pervades the court's construction of condition.

Since such a condition contains the potential to destroy an estate, it is viewed with disfavor by the law. *Godding v. Hall,* 56 Colo. 579, 140 Pac. 165. To exercise the right of reverter is to effect a forfeiture, *Brown v. State,* 5 Colo. 496; *Union Colony v. Gallie,* supra; *Townsend v. Allen,* 114 Cal. App. (2d) 291, 250 P. (2d) 292, 39 A.L.R. (2d) 1108. Forfeitures are abhorrent to the law, and hence will be "construed with great strictness." *Murphy v. Traynor,* 110 Colo. 466, 135 P. (2d) 230, 145 A.L.R. 1059; *Union Colony v. Gallie,* supra.

Until there is a breach of the condition subsequent, the grantee or any of his successors in title "has the same right in, and privileges over his estate as though the estate were an estate in fee-simple." *People ex rel. v. Koerner,* 92 Colo. 83, 18 P. (2d) 327.

It is because of the very nature of the condition contained in the deed that the corporation contends there

is not a justiciable issue in this case. Must Cole erect a building and therein manufacture, sell or otherwise dispose of intoxicating liquors in defiance of the condition as the only way to test its continued existence?

[3] Rule 105 (a), R.C.P. Colo., provides that "[a]n action may be brought for the purpose of obtaining a complete adjudication of the rights of all parties thereto, with respect to any real property. . . . The court in its decree shall grant full and adequate relief so as to completely determine the controversy and enforce the rights of the parties. * * * "

Where the reversioner has by his conduct extinguished the condition, or where the development of the platted area in which the conveyed land is located has wrought such a change that the condition no longer is effectual, courts have generally quieted the title to the realty burdened with such a possibility of reverter. *Union Colony v. Gallie,* supra; *Townsend v. Allen,* supra; *Wedum-Aldahl Co. v. Miller,* 18 Cal. App. (2d) 745, 64 P. (2d) 762; *Storke v. Penn Mutual Life Ins. Co.,* 390 Ill. 619, 61 N.E. (2d) 552; *Lantz v. Pence,* 127 Ind. App. 620, 142 N.E. (2d) 456; *White v. Kentling,* 345 Mo. 526, 134 S.W. (2d) 39. See 39 A.L.R. (2d) 1116.

In *Wedum-Aldahl Co. v. Miller,* supra, title of the grantee to lots in a subdivision *was quieted* free from the possibility of reverter to the reversioner in the event of breach of restrictions — in that case, as in this, restrictions against intoxicating liquor. Long Beach, like earliest Colorado Springs, was to be an ideal city free of traffic in intoxicating liquor.

In the cited case the grantee was said to have alleged "that the grantor waived the restrictions and acquiesced in open sales of liquors upon numerous other adjoining properties in the same tract, that the grantor voluntarily released the owners of several lots in said tract from the effect of the restriction, and by its acquiescence, conduct, and the changed conditions of the property abandoned and lost the right to enforce the liquor clause

or the right to enforce the reversion of title to the lots involved in this suit." This is another aspect in which the case now under consideration is an echo of the cited one.

Do these acts — selling some lots without the restriction, not asserting the right of reverter in instances where the condition was broken, and selling the right of reverter in other instances — constitute a waiver, and acquiescence in the extinguishment, of the possibility of reverter? *Wedum-Aldahl Co. v. Miller*, supra; *Townsend v. Allen*, supra; and *Storke v. Penn Mutual Life Ins. Co.*, supra, supply the answer to the question.

But before we deal with the question of waiver, we would dispose of a contention of the corporation. The corporation takes the position that waiver may not be asserted because there has been no showing of a detrimental change of position by Cole as a result of the corporation's conduct. This concept does not comport with the law regarding waiver. A change of positio·detrimental to the person acting in response to a situation created by another is an ingredient of the doctrine of estoppel.

No better statement of the distinction between waiver and estoppel appears in the Reports than that of Judge Lockwood in *City of Glendale v. Coquat*, 46 Ariz. 478, 52 P. (2d) 1178, 102 A.L.R. 837. We adopt this language:

"There are several essential differences between the two doctrines. According to all the accepted definitions of the term waiver, it is essential that there should be an intentional relinquishment of a known right, and it, therefore, assumes the existence of a choice between the relinquishment and the enforcement of the right, while in an estoppel the intention to waive a right does not need to be present. Also, waiver depends upon what one himself intends to do, regardless of the attitude assumed by the other party, whereas estoppel depends rather upon what the other party has done. Waiver does not necessarily imply that the other party has been

misled to his prejudice, but an estoppel always involves this element. Estoppel results from an act which operates to the injury of the other party, while waiver may even affect him beneficially. Estoppel frequently carries the implication of fraud, but waiver never does."

It is true "that a reversioner may *waive* a condition, and that the breach does not of itself determine the grantee's estate without some act on the part of the person entitled to take advantage of the forfeiture. . . ." *Mosca Town Co. v. Wellington,* 39 Colo. 326, 89 Pac. 783, 121 Am. S.R. 175. See 39 A.L.R. (2d) 1116.

Adverting again to *Wedum-Aldahl Co. v. Miller,* supra, we find that the appellate court treated evidence similar to that contained in the stipulation of this case in this wise:

"The plaintiff was entitled to a decree quieting title in it to said lots free of the liquor restriction clause in the deed on the ground that the clause is unenforceable for the reasons that it was waived and abandoned by the grantor, and that the changed conditions of the property in question and the surrounding portion of the tract in which it is included since the execution of the deed render it inequitable to enforce the clause or to declare a forfeiture of the title.

\* \* \*

"There is no reasonable doubt from this record, together with the necessary inferences therefrom, that the grantor of these lots waived and relinquished the right to enforce the liquor restriction clause of this deed by the conduct which was pursued by it with respect to other adjacent similar lots constituting a portion of the same tract and plan.

\* \* \*

" 'The right to enforce a restrictive agreement may be lost by laches or acquiescence. \* \* \*

" 'In the case of restrictions imposed in pursuance of a general plan, that the originator of the plan, the common grantor, acquiesces in, that is, fails to take legal

action to prevent, substantial infringements of the plan by some of his grantees, has been regarded as showing an abandonment by him of the plan, precluding him from subsequently enforcing the restriction as against others.' "

Cole offered certain printed material in evidence as historical data. The trial court refused to admit it. We need not concern ourselves with the propriety of the ruling of the trial court. Data pertinent to this inquiry should have been the subject of judicial notice.

The district court of El Paso County should have taken "judicial notice of matters of common knowledge in the community where it sits." *National Optical Co. v. United States F. & G. Co.,* 77 Colo. 130, 235 Pac. 343. The history of Colorado Springs, its growth and development, are matters of common knowledge of which the trial court should take judicial notice. *East St. John's Shingle Co. v. City of Portland,* 195 Ore. 505, 246 P. (2d) 554; *Lewis v. San Antonio River Authority,* (Tex. App.) 343 S.W. (2d) 475.

From a small insulated community, Colorado Springs has grown into a cosmopolitan city and has become a major tourist attraction. It has met the demands of tourism. Over the years it has undergone a metamorphosis; it has a present character wholly different from that which it had in its beginning. To attract and hold the tourist business, Colorado Springs has made available many allurements and charming places. Outlets for the purchase of intoxicating liquors, pursuant to the laws of the state, are there in numbers. These are matters of common knowledge.

Again we return to the case of *Wedum-Aldahl Co. v. Miller* to consider its discussion of changed conditions and their effect upon the possibility of reverter. The court observed that since the repeal of the Eighteenth Amendment to the Federal Constitution "and the rapid transforming of the village into a thriving city so changed the conditions in Long Beach that many owners

of lots desired to be relieved of the liquor restrictions in their deeds."

The court then said, "When the conditions affecting a restrictive use of land have so changed as to defeat the purpose of the restriction and it has therefore become inequitable to enforce the restriction, the owner may be relieved therefrom in a proper proceeding." To like effect are *Townsend v. Allen,* supra, and *Storke v. Penn Mutual Life Ins. Co.,* supra.

*Union Colony v. Gallie,* supra, is controlling in certain aspects of this case. There the creator of the possibility of reversion sought to convey all of its interests, including its reversionary interest, to a new corporation, and thereafter the corporate life of the older company expired. Plaintiff, who owned property subject to the condition subsequent, brought suit for declaratory relief, seeking to have the condition voided.

A demurrer was addressed to the complaint and overruled, whereupon the defendants elected to stand on their demurrer. The trial court thereupon entered a decree favorable to the plaintiff. In so doing, it in effect cancelled the possibility of reverter and quieted the title in the plaintiff.

This Court made these observations in the course of its opinion: "The question was raised below as to whether plaintiff had chosen the proper remedy in seeking a declaratory judgment, and the trial court ruled that she had." It noted that the defendants assigned as error the decree quieting title against the claims of the defendant.

The opinion concludes that: "Since our holding that the condition in the deed is no longer enforceable against plaintiff, it is apparent that a similar holding would be required in any case where the title is deraigned from the same source, and held under the same condition; consequently, there was no error in the court determining, which it did in effect by quieting the title of all such persons, that the status of the surviving

trustee and the new company with respect to the condition is such that it can no longer be enforced at all."

If changed conditions and waiver make the condition unenforceable in the present case, as we conclude they do, we see no reason why title may not be quieted in this action if title could have been quieted in a suit for declaratory relief.

The judgment is reversed and the cause remanded with directions to enter a decree consonant with the views herein expressed.

Mr. Justice Sutton not participating.